TEXAS SUPPLY CENTER, INC. and
First Texas Bank, Appellants,

v.

DAON CORPORATION and Shaw
Industries, Inc., Appellees.

No. 05–81–00522–CV.

Court of Appeals of Texas,
Dallas.

Aug. 25, 1982.

Rehearing Denied Oct. 7, 1982.

Thomas L. Cook, Hightower, Alexander, Cook & Birnbaum, Jerry Lastelick, Lastelick, Anderson & Hilliard, Dallas, for appellants.

Steve Brutsche, Weil, Brutsche & Clements, Michael Prince, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellees.

Before AKIN, ALLEN and GUILLOT, JJ.

ALLEN, Justice.

Daon Corporation brought this interpleader action against Shaw Industries, Inc., The Supply Center, Inc., and Texas Western Financial Corporation alleging that it was being subjected to adverse and conflicting claims arising from work done on its River Oaks condominium units. After the suit was filed, The Supply Center transferred its assets and accounts receivables to Texas Supply Center, Inc. and Texas Western Financial Corporation assigned its interest to First Texas Bank. Texas Supply Center and Shaw Industries counterclaimed, and First Texas Bank sought to intervene. The trial court granted Shaw Industries' and Daon's motions for summary judgment, denied Texas Supply Center's counterclaim and struck First Texas Bank's petition in intervention. This appeal followed. We hold that (1) the trial court erred in striking the bank's petition in intervention; (2) the judicial admissions of The Supply Center were not conclusively established against Texas Supply Center; (3) the trial court erred in granting Daon's motion for summary judgment; and (4) the trial court erred in ordering that Shaw Industries recover the funds deposited in the court's registry. Accordingly, the judgment of the trial court is affirmed in part and reversed and remanded in part.

The summary judgment proof establishes that Daon Corporation contracted in writing with The Supply Center to provide and install carpet and vinyl in the River Oaks apartments, then being converted to condominium units by Daon. Shaw Industries supplied the carpet used on the Daon project to The Supply Center. Delay in payment of Daon's account to The Supply Center resulted in an arrearage of The Supply Center's account to Shaw Industries. Shaw refused to sell carpet to The Supply Center until Daon signed an agreement guaranteeing payment for all carpet sold to The Supply Center for use on Daon's River Oaks project. Daon's continued withholding of payments on The Supply Center account resulted in the filing of a mechanics lien on the River Oaks apartment property. The Supply Center then pledged its present

and future accounts receivable, including the Daon account, to Texas Western Financial Corporation and executed two financing statements, which were filed on March 27, 1979 and April 22, 1980. On May 8, 1980, Texas Western notified Daon that its account with The Supply Center had been assigned to Texas Western, that the balance due was $53,997.32, and that payment was to be sent directly to Texas Western.

On May 20, 1980, Daon Corporation filed its petition in interpleader and deposited $38,729.31 into the registry of the court. On June 5, 1980, The Supply Center sued Daon on its past due account in the amount of $52,046.65. This claim was consolidated with Daon's interpleader suit. On July 24, 1980, The Supply Center sold its assets by bulk transfer to Texas Supply Center. On July 31, 1980, Texas Western assigned to First Texas Bank the security interest in all collateral obtained from The Supply Center.

On November 14, 1980, Daon filed an amended petition joining Texas Supply Center, Inc. as a party defendant. On that same date, Daon filed its request for admissions to The Supply Center. This request for admissions was not served upon Texas Supply Center. The Supply Center failed to answer the request for admissions, and on January 9, 1981, the trial court signed an order deeming all of the matters in the request admitted. Texas Supply Center then moved that the court not hold Daon's request for admissions binding on Texas Supply Center and requested leave to answer the request for admissions propounded to The Supply Center. Both motions were overruled.

On July 2, 1981, approximately one week before the hearing on the motions for summary judgment, First Texas Bank attempted to intervene in the proceedings. At the hearing on the summary judgment motions, the trial court, acting on the oral motions of Daon and Shaw Industries, struck the intervention as untimely and granted Daon's and Shaw Industries' motions for summary judgment.

Our threshold question concerns the propriety of the trial court's action in striking First Texas Bank's petition in intervention on the ground that it was untimely. The bank contends that the court's order deprived it of a substantial right to assert its security interest in the interpled funds. We agree. Tex.R.Civ.P. 60 provides, in relevant part, that:

> "Any party may intervene, subject to being stricken out by the court for sufficient cause on the motion of the opposite party...."

Under this rule, a person or entity has the right to intervene if the intervenor could have brought the same action, or any part thereof, in his own name. *Rogers v. Searle,* 533 S.W.2d 440, 442 (Tex.Civ.App.—Corpus Christi 1976, no writ); *Inter-Continental Corporation v. Moody,* 411 S.W.2d 578, 589 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.). It is an abuse of discretion to strike a petition in intervention if the intervenor meets the above test, if the intervention will not complicate the case by a multiplication of the issues, and if intervention is almost essential to effectively protect the intervenor's interest. *Inter-Continental Corporation v. Moody, supra* at 589. Based on this standard we hold that the trial court abused its discretion in striking First Texas Bank's petition in intervention. If the intervention is permitted and the bank is successful in establishing its security interest in the interpled funds, that interest may be superior to the claims of Shaw Industries and Texas Supply Center as general creditors. The trial court's judgment denies the bank any rights to the funds held in the court's registry, and thus, in effect, makes a final adjudication against its claim of a security interest without allowing the intervenor any opportunity to establish that interest. *See Apparel Contractors, Inc. v. Vantage Properties, Inc.,* 620 S.W.2d 666, 667–668 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

We next consider Texas Supply Center's contention that the trial court erred in deeming admitted certain request for admissions made by Daon on The Supply Center. Specifically, Texas Supply Center urges that the sanctions imposed by the

trial court on The Supply Center for failing to answer the request for admissions could not be transferred to it. We agree. The request for admissions propounded to The Supply Center sought to establish, among other things, that the total amount owing to The Supply Center by Daon was $38,729.31 as of the date of Daon's interpleader action. This sum was judicially admitted against The Supply Center upon its failure to respond to the request for admissions. Tex.R.Civ.P. 169. The issue before us is whether the matters deemed admitted against The Supply Center were conclusively established against its successor in interest, Texas Supply Center.

In *Freestone County Title and Abstract v. Johnson,* 594 S.W.2d 817, 818 (Tex. Civ.App.—Dallas 1980, no writ), we recognized that the statements of one defendant cannot be considered as judicial admissions of a co-defendant under Rule 169 because that rule provides only that any matter admitted under its provisions "is conclusively established as to the party making the admission." As against a co-defendant, such admissions are hearsay and are admissible, if at all, only as extra-judicial admissions where there is a "joint interest or privity in design" between the defendants. The rationale underlying the *Freestone County Title and Abstract v. Johnson* decision is even more compelling where the party to whom the request for admissions were made does not respond to them. The action by the trial court in deeming admitted each of the matters of which an admission is requested is a judicial sanction designed to encourage compliance under Rule 169. Consequently, the matter deemed admitted is not an assertion that is admissible for the truth of the matter asserted as an exception to the hearsay rule. It cannot be said that a party, by failing to answer a request for admission, has made a statement that may in turn be imputed to his co-party under the theory of vicarious admissions. *Cf. Members Mutual Insurance Company v. Randolph,* 477 S.W.2d 315, 318 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.) and *Davis v. Coastal States Petrochemical Company,* 405 S.W.2d 854,

855 (Tex.Civ.App.—Houston 1966, no writ) (failure of defendant to answer request for admissions constitutes hearsay as to co-defendant.) Accordingly, we hold that the trial court erred in finding that Texas Supply Center is bound as a matter of law by the admissions of The Supply Center.

Since Texas Supply Center is not bound by The Center's admissions, the request for admissions will not support Daon's motion for summary judgment. The record shows that a material fact issue exists with regard to the amount of Daon's obligation to Texas Supply Center. Daon contends that Texas Supply Center is in no better position than The Supply Center and that its debt is fixed at $38,729.31. Texas Supply Center urges that the amount owed by Daon on its past due account is $52,946.65. Because of this disputed fact issue, the summary judgment cannot stand. *See Grierson v. Sreenan,* 560 S.W.2d 423, 425 (Tex.Civ.App.—Beaumont 1977, no writ).

For the foregoing reasons that portion of the judgment awarding Shaw Industries recovery against The Supply Center and Daon Corporation is affirmed. That portion of the trial court's judgment providing that Shaw Industries recover the sum of $38,729.31 from the registry of the court is reversed and remanded. That portion of the judgment striking First Texas Bank's petition in intervention is reversed and remanded. That portion of the trial court's judgment granting Daon Corporation's motion for summary judgment is in all things reversed and remanded.