**HYUNDAI MOTOR COMPANY; Hyundai Motor America, Inc.; and Port City Hyundai, Inc., Appellants,**

v.

**Mario ALVARADO, Appellee.**

No. 04–92–00387–CV.

Court of Appeals of Texas, San Antonio.

Nov. 25, 1998.

Rehearing Overruled Feb. 5, 1999.

Ruth Greenfield Malinas, David M. Prichard, Ball & Weed, P.C., Thomas H. Crofts, Jr., Crofts, Callaway & jefferson, P.C., San Antonio, David E. Keltner, Jose, Henry, Brantley & Keltner, L.L.P., Keith D. Calcote, Haynes and Boone, L.L.P., Fort Worth, for Appellant.

Steve T. Hastings, Huerta, Hastings & Allison, Rose Rivera Vela, Barger & Moss, L.L.P., Corpus Christi, Rebecca E. Hamilton,

Todd W. White, White, White & Hamilton, P.C., Rockwall, Guy H. Allison, The Allison Law Firm, Corpus Christi, for Appellee.

Before PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice and BILL J. STEPHENS, Justice.[1]

## OPINION

PHIL HARDBERGER, Chief Justice.

This product liability suit against an automobile manufacturer, Hyundai,[2] resulted in a jury verdict of $18 million. The suit was premised on the failure of a seatbelt to restrain Mario Alvarado ("Mario"), an occupant of a vehicle during an automobile accident. As a result of the injuries he sustained in the accident, Mario is permanently paralyzed from his mid-chest downwards. The jury found against Hyundai on liability, but awarded only actual damages, rejecting Mario's assertions of gross negligence.

Hyundai appeals on nine points of error. We affirm the judgment, as modified.

### PRIOR LEGAL HISTORY

This is an old case that appears destined to take a decade to resolve. It has already been the subject of two Texas Supreme Court decisions. The car accident and injury occurred in 1989. The jury rendered its verdict and judgment was entered in 1992. Today, in 1998, this court, for the first time, addresses Hyundai's appellate points on the merits.

Mario first filed his suit in Webb County, where the accident occurred. Mario alleged design defect, inadequate warnings, and inadequate instructions regarding the seatbelts, as well as common-law negligence and gross negligence. Hyundai moved for partial summary judgment, asserting that the claims relating to the seat belt inadequacies were all preempted by the federal Motor Safety Act. The trial court granted the motion. Discouraged by that ruling, Mario sought to escape its effects by taking a non-suit in Webb County and filing a subsequent suit relating to the same occurrence in Duval County.

The Webb County trial judge ruled that its non-suit order was with prejudice to the claims adjudicated by the partial summary judgment. On appeal, this court disagreed, concluding that the dismissal should have been without prejudice. *Alvarado v. Hyundai Motor Co.*, 885 S.W.2d 167, 175 (Tex. App.—San Antonio 1994), *rev'd*, 892 S.W.2d 853 (1995). The Texas Supreme Court reversed this court, holding that the non-suit order was with prejudice, but the Court remanded the case to this court to consider whether the Webb County trial court erred in ruling that the claims were preempted by federal law. *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex.1995).

On remand, this court held that there was neither express nor implied preemption of the claims, and we reversed the Webb County judgment. *Alvarado v. Hyundai Motor Co.*, 908 S.W.2d 243 (Tex.App.—San Antonio 1995), *aff'd*, 974 S.W.2d 1 (Tex.1998). The Texas Supreme Court affirmed our judgment, also concluding that the claims were not preempted by federal law. *Hyundai Motor Co. v. Alvarado*, 974 S.W.2d 1 (Tex. 1998).

We now address Hyundai's nine points of error on appeal from the Duval County judgment.

### FACTUAL HISTORY

While some of the factual evidence was disputed, there was ample evidence, if believed, to establish the following general facts.

Mario, a high school student, was injured on February 17, 1989, while riding as a passenger in the front seat of a Hyundai Excel when it overturned. The driver of the Excel, Vicente Reyes ("Reyes"), lost control while passing another vehicle on a rain-slick highway near Laredo in Webb County. In addition to Reyes and Mario, two additional passengers were in the back seat of the Excel:

1. The Honorable Bill J. Stephens, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. For ease of reference, we refer to appellants in this opinion collectively as "Hyundai," unless specific reference is required for purposes of clarity.

Fidel Alvarado, III and Marcus Ruiz. Only Mario was seriously injured.

The Excel's seatbelt restraint system was a "two-point" system, which did not include a lap belt.[3] Mario was wearing his seatbelt restraint at the time of the accident. During the accident, the Excel's sunroof opened, and the restraint system did not restrain Mario, who was thrown from the car. Mario sustained head injuries, causing him to be a permanent paraplegic.

Mario alleged, and the jury found, that the Excel was a defective automobile and that its seatbelt restraint system did not restrain. There are sufficient facts to uphold the verdict.

At the time the Excel was made (1988), no other manufacturer was making a car with a sunroof and only a two-point restraint system. Even without a sunroof, a car with a two-point system was tested by General Motors in 1976, and General Motors reported that without a lap belt, a dummy was completely ejected during a rollover. Swiss, Swedish, Canadian, and Australian studies, as well as various other articles in government documents, all set forth the conclusion that ejection is significantly more frequent in cars with only two-point restraint systems, and lap belts make a critical difference in rollovers. The design engineer for the Excel, who decided not to put a lap belt in the car, confirmed that he was aware of the Canadian report which concluded that a two-point system was less effective than a three-point system in preventing ejection during a collision.

Hyundai had performed tests using an Excel with a two-point system but without a sunroof. The tests, performed at twenty-one miles per hour, revealed that during a rollover an occupant would "float" above the seat with his head in continuous contact with the car's roof. The owner's manual published by Hyundai for the 1989 Excel expressly stated that "for full restraint system protection" passengers needed to make sure that the lap belt was in place. Although this was the owner's manual for 1989, it had been written several months before the Excel in question

was manufactured and sold. Suffice it to say that there was evidence, if believed, to support a finding of negligence, proximate cause and damages.

The jury found both Hyundai and the driver, Reyes, proximately caused Mario's injuries. Reyes was found twenty percent liable, and Hyundai was found eighty percent liable. No negligence was attributed to Mario. The jury also found that design and marketing defects in the Excel were producing causes of Mario's injuries. The jury found no gross negligence on the part of Hyundai.

The jury awarded Mario $18,000,000 in actual damages. The trial judge overruled Hyundai's motion for judgment notwithstanding the verdict, and rendered judgment that Hyundai Motor Company, Hyundai Motor America, Inc., and Reyes were jointly and several liable to Mario for the full amount awarded by the jury. The judgment further held Port City Hyundai, Inc. severally liable for $1,148,769.52.

### VENUE

Hyundai contends in its first point of error that venue was improper in Duval County. Hyundai asserts that Webb County, where the accident occurred, was the county of proper venue.

■ The standard of appellate review in venue cases is governed by section 15.064(b) of the Texas Civil Practice and Remedies Code, which states:

> On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error and shall be reversible error. In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.064(b) (Vernon 1986). A trial court's venue determination will be upheld on appeal if there is any "probative evidence" that venue was proper in the county where judgment was rendered. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex.1993); *Rosales v. H.E. Butt Grocery Co.,* 905 S.W.2d 745, 750 (Tex.App.—

---

**3.** Systems with a lap belt are called a "three-     point" system.

San Antonio 1995, writ denied). If Hyundai is correct in asserting that venue was improper in Duval County, the case must be reversed and remanded.

Two venue provisions contained in the Texas Civil Practice and Remedies Code are at issue in this case. The first is section 15.061, which states:

> When two or more parties are joined as defendants in the same action or two or more claims or causes of action are properly joined in one action and the court has venue of an action or claim against any one defendant, the court also has venue of all claims or actions against all defendants. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 15.061 (Vernon 1986). The second section that must be considered is 15.062, which provides:

> Venue of the main action shall establish venue of a counterclaim, cross claim or third-party claim properly joined under the Texas Rules of Civil Procedure.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.062 (Vernon 1986).

Alvarado filed this negligence suit in Duval County against Vicente Reyes, the driver of the car. Reyes's mother, Rita Padron, was also sued under the doctrine of negligent entrustment. Both Reyes and Padron timely answered the lawsuit with a general denial. They did not contest venue. Reyes and Padron also filed a third-party claim against Hyundai for contribution and/or indemnity. Alvarado then amended his petition to include negligence and product liability causes of action against the third-party defendant, Hyundai. Hyundai timely filed an objection to venue, which was denied by the trial court.

Venue in Duval County is clearly proper as to Reyes and Padron. Rule 86 of the Texas Rules of Civil Procedure states in part:

> An objection to improper venue is waived if not made by written motion filed prior to or concurrently with any other plea, pleading or motion except a special appearance motion provided for in Rule 120a.

TEX.R. CIV. P. 86. Once Reyes and Padron answered the lawsuit without raising any venue objection, they were properly in the Duval County suit.[4] *See Garza v. Texas Dept. of Human Services,* 757 S.W.2d 44, 47–48 (Tex.App.—San Antonio 1988, writ denied); *Sutton v. State Bar of Texas,* 750 S.W.2d 853, 855 (Tex.App.—El Paso 1988, writ denied).

 Nevertheless, a wavier of venue by one defendant [Reyes and Padron] does not prevent another defendant [Hyundai] from appropriately challenging venue. *See WTFO, Inc. v. Braithwaite,* 899 S.W.2d 709, 718 (Tex.App.—Dallas 1995, no writ) (holding that waiver by one defendant does not prevent another defendant from appropriately challenging venue by filing a motion to transfer); *Pearson v. Jones Co., Ltd.,* 898 S.W.2d 329, 332–33 (Tex.App.—Eastland 1994, no writ) (waiver of venue by two defendants through the filing of answers and making general appearances does not waive other defendant's venue objection). If waiver were the only ground relied upon by Mario to establish Duval County as a proper venue with respect to Hyundai, our decision would be an easy one. Reyes and Padron can only waive their own venue rights: not the venue rights of Hyundai. But that is not really the legal issue presented. The real issue is whether "tag-along" venue is a legitimate method of acquiring venue. The following quote demonstrates a belief that it is:

> This (the venue statute) permits a plaintiff to establish venue against a target defendant by first filing suit against a friendly defendant, who then will file a third-party action against the target defendant.

JUSTICE MICHOL O'CONNOR, ET AL., O'CONNOR'S TEXAS RULES: CIVIL TRIALS 95 (1997). This also appears to have been the opinion of the Texas Supreme Court, at least until the venue statute was amended by the legislature after this case was ruled upon by the trial court. In *Polaris Inv. Management Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex.1995), the Court stated:

> For this reason, Polaris invites this Court to reinterpret section 15.061 of the Texas Civil Practice and Remedies Code to pro-

---

4. Reyes and Padron also later failed to contest the venue question contained in a request for admissions. As a result, their residency in Duval County was deemed admitted.

hibit what it characterizes as plaintiffs' "tag-along" venue.... It is well settled that "when the Legislature has spoken on a subject, its determination is binding upon the courts unless the Legislature has exceeded its constitutional authority." ... Venue is a creature of legislative grace, and because a change of venue was unknown to the common law, the power to make venue changes is purely statutory.... Accordingly, appellate review of trial court venue rulings is generally limited to a determination of whether the trial court ruling was faithful to the relevant venue statute. It is not within the province of this Court to reconstrue, rewrite or contravene a venue statute when the intent of the Legislature is clear.

The "tag-along" in *Polaris* referred to plaintiffs, and in the instant case, we are speaking of defendants, but we do not think this is a meaningful distinction. All the reasons given by the Supreme Court in *Polaris* are equally relevant whether speaking of one side of the docket or the other. It should be noted that because of the language in *Polaris,* and other cases where either real or perceived abuses occurred under the law existing at the time *Polaris* was decided, the Legislature amended the venue statute in 1995. The stated purpose of Senate Bill 32 (which became the new venue statute) was to "eliminate the many loopholes and legal strategies that promote forum shopping— allowing someone to choose the most favorable county despite its tenuous connection to the case." HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. S.B. 32, 74th Leg., R.S. (1995).

It is not necessary for this court to determine in this case whether the 1995 venue statute still allows "tag-along" venue for either defendants or plaintiffs, or if that has become a relic of discarded artifacts of legal history. But we do agree with *Polaris* and Justice O'Connor that at the time this decision was made by the trial court in 1991, it was allowed. Accordingly, we overrule Hyundai's first point of error.

## RES JUDICATA

■ Hyundai's second point of error contends that the trial court erred in denying defendants' motion for judgment notwithstanding the verdict because any recovery in the Duval County suit was barred by the judgment in the earlier Webb County suit. The judgment in the Webb County suit, however, has been reversed on appeal. *See Alvarado v. Hyundai Motor Co.,* 908 S.W.2d 243 (Tex.App.—San Antonio 1995), *aff'd,* 974 S.W.2d 1 (Tex.1998). A judgment that has been reversed on appeal does not have res judicata effect. *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 6 (Tex.1986); *Acker v. Denton Publ'g Co.,* 937 S.W.2d 111, 117–18 (Tex.App.—Fort Worth 1996, no writ); *Krenek v. Texstar North America, Inc.,* 787 S.W.2d 566, 569 (Tex.App.—Corpus Christi 1990, writ denied). Hyundai's second point of error is overruled.

## PLEA IN ABATEMENT

In Hyundai's third point of error, Hyundai contends that the trial court erred in refusing to abate the Duval County suit because Webb County had dominant jurisdiction over the cause of action.

■ "When an inherent interrelationship of the subject matter exists in two pending lawsuits, a plea in abatement in the second action must be granted." *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 247 (Tex. 1988). In reviewing a trial court's ruling on a plea in abatement, we must consider whether an identity exists between the issues in the two causes. *Dolenz v. Continental Nat'l Bank of Fort Worth,* 620 S.W.2d 572, 575 (Tex.1981). In the absence of an identity between the issues, the trial court has the discretion to deny the abatement. *Dolenz,* 620 S.W.2d at 575. If the prior lawsuit is dismissed, the grounds for abatement cease to exist because the first lawsuit is no longer pending. *See Pleasants v. Emmons,* 871 S.W.2d 296, 298 (Tex.App.—Eastland 1994, no writ); *Trapnell v. Hunter,* 785 S.W.2d 426, 427 (Tex.App.—Corpus Christi 1990, orig. proceeding).

■ Hyundai contends that Mario's dismissal of the Webb County suit did not deprive Webb County of jurisdiction because an appeal relating to Webb County's summary

judgment was pending. Although we agree that Webb County retained jurisdiction over the issues decided in the summary judgment while the appeal was pending, *see Prairie Producing Co. v. Martens*, 705 S.W.2d 257, 260 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), abatement was no longer required with respect to the other issues raised in the Duval County lawsuit because the Webb County suit was no longer pending as to those issues. *See Pleasants v. Emmons*, 871 S.W.2d at 298; *Trapnell*, 785 S.W.2d at 427. The trial court recognized this distinction and granted the plea in abatement as to the issues pending on appeal arising out of the Webb County litigation.[5] To the extent Mario offered evidence with regard to the issues the trial court's order abated, Hyundai could complain of the erroneous admission of such evidence on relevancy or other grounds. Hyundai cannot, however, bootstrap the abatement argument with the subsequent developments at trial in an effort to show harm from the trial court's partial denial of the abatement. Given the dismissal of the prior lawsuit, the trial court did not abuse its discretion in denying the plea in abatement as to those issues that were not pending in the prior lawsuit at the time the dismissal was ordered.[6] Hyundai's third point of error is overruled.

## EVIDENTIARY RULINGS

■ Hyundai's fourth and fifth points of error complain of the trial court's admission of certain evidence. The admission of evidence is committed to the trial court's discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). A trial court's judgment will not be reversed on appeal on the basis of erroneously admitted evidence unless the complaining party shows that: (1) the trial court erred in admitting the evidence; and (2) such error was reasonably calculated to cause and probably did cause rendition of an improper judgment or was such that it prevented the complaining party from making a proper presentation of the case to the appellate court. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 340 (Tex. 1998).

## A. OTHER ACCIDENTS

Hyundai timely objected to testimony regarding other accidents, and Hyundai's fourth point of error asserts that the trial court's failure to sustain these objections was reversible error. Specifically, Hyundai complains about the testimony given by Linda Eastman and Michael Herrera.

Eastman was designated by Hyundai to testify about similar claims involving the failure of Hyundai's passive restraint systems. She testified that Hyundai had notice of five other claims for accidents involving rollovers and ejections, or failure to restrain during the malfunction of passive restraint systems installed in Hyundai vehicles. Eastman testified that each of the five claims involved a rollover ejection or a rollover in which the restraint system failed. She also testified that Mario's claim involved a rollover ejection.

Herrera testified that he and his wife had been involved in a rollover accident in a 1987 Hyundai Excel with a two-point passive restraint system. Although both were wearing their seatbelts, his wife was ejected from the car and died as a result of her injuries.

---

5. The order grants the plea in abatement as to the following allegations: (1) the vehicle in question was not equipped with an active lap belt; (2) the Defendants failed to give adequate warnings of the increased danger to which passengers were exposed by the lack of an active lap belt; and (3) the Defendants failed to adequately test the passenger restraint system. These are identical to the issues presented in the petition filed in Webb County. *See Alvarado*, 885 S.W.2d at 168–69. Hyundai's motion for partial summary judgment asserted that each of these claims, except the failure to instruct claim, was preempted by federal law. *Hyundai Motor Co.*, 892 S.W.2d at 854.

6. Hyundai further contends that the trial court's order results in an improper splitting of Mario's cause of action. Hyundai recognizes, however, that the rule against splitting a single cause of action is a branch of the res judicata doctrine. *See Pierce v. Reynolds*, 160 Tex. 198, 329 S.W.2d 76, 78 (1959); *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 156 (Tex.Civ.App.—Dallas 1980, no writ). We previously addressed Hyundai's res judicata argument and conclude that to the extent the res judicata argument fails, Hyundai's improper splitting argument must also fail.

In products liability cases, evidence of other accidents involving the same product is admissible if such accidents occurred under reasonably similar, but not necessarily identical, circumstances to those surrounding the litigated event. *See Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d at 341 & n. 7; *Missouri –Kansas–Texas R.R. Co. v. May,* 600 S.W.2d 755, 756 (Tex.1980). In applying this rule, courts have recognized that "the requisite degree of similarity is plainly not very high." *McInnes v. Yamaha Motor Corp., U.S.A.,* 659 S.W.2d 704, 709 (Tex.App.—Corpus Christi 1983), *aff'd,* 673 S.W.2d 185 (Tex.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *see also Rush v. Bucyrus–Erie Co.,* 646 S.W.2d 298, 302 (Tex.App.—Tyler 1983, writ ref'd n.r.e.).

Hyundai asserts that sufficient similarity was not shown because the other accidents did not involve cars with sunroofs and the evidence did not detail the circumstances surrounding each of these accidents. We disagree. In *Magic Chef, Inc. v. Sibley,* 546 S.W.2d 851, 855 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.), the only significant shared characteristics justifying admissibility were the brand of range and the inadvertence of ignition. In this case, the evidence indicated that the other accidents generally shared some, if not all, of the following characteristics: type of vehicle; manufacturer; type of restraint system; rollover-ejection type of accident; and failure of passive restraint system. We hold that the other accidents were reasonably similar, though not necessarily identical. The fact that most of the vehicles involved in the other accidents did not have sunroofs does not detract from the similarity of the failure of the other vehicles' two-point safety restraint systems, which allowed the occupants of the vehicles to "float" above their seats.

Hyundai also argues that the other accidents are not admissible because they were based on mere allegations or claims. However, evidence of other accidents that have been found admissible in other cases generally involve evidence of complaints or accident reports involving the defect. *See McEwen v. Wal–Mart Stores, Inc.,* 975 S.W.2d 25 (Tex.App.—San Antonio 1998, pet. filed) (accident reports); *McInnes,* 659 S.W.2d at 709 (warranty complaints). These cases do not require that the similar accidents be proven to have occurred as stated in a complaint with absolute certainty. The fact that the other complaints have not been so proven goes to their weight, not to their admissibility. Hyundai's fourth point of error is overruled.

## B. "ODI RESUME"

Hyundai next complains that the trial court erred in admitting into evidence the "ODI Resume." The ODI Resume was a one-page document prepared by the National Highway Transportation Safety Administration ("NHTSA"), Office of Defect Investigation ("ODI"), as a product of its investigation concerning consumer complaints about two-point passive restraint systems in 1987, 1988, and 1989 Hyundai Excels.[7] Hyundai complains that the ODI Resume is hearsay that does not meet the criteria of rule 803(8) of the Texas Rules of Civil Evidence because it

---

7. Under the heading of the ODI Resume it states:

Investigation: PE91–097
Subject: Automatic Shoulder Belt Failure
Prompted By: Consumer Complaints
The Synopsis of the ODI resume states: "The automatic shoulder belt (2–point non-motorized passive belt) system may not provide adequate protection to the front seat occupants during a crash." The summary of the ODI Resume provides:
Most complaints allege that the automatic shoulder belt did not properly restrain the occupants during accidents: 48 accidents resulted in 43 injuries and 7 fatalities. Other complaints state that the shoulder belts do not retract properly. The subject vehicles are not equipped with front seat lap belts. Model year 1989 Excels are added to the investigation because these passive belts appear to be identical to 1987 and 1988 Excel passive belts; the ODI complaint database also shows several reports on the 1989 Excels.
A preliminary analysis of the ODI complaint database shows that the complaint rate is higher for the subject vehicles than for the Excels equipped with 3–point manual belts (note: both active and passive belts were available in the 1987–1989 Excels). Also, the complaint rate for the subject vehicles is the highest among all models which have the 2–point non-motorized passive belt system.

does not reflect any factual findings resulting from an investigation. Rule 803(8) provides as follows:

> **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, or (C) factual findings resulting from an investigation made pursuant to authority granted by law; unless the source of information or other circumstances indicate lack of trustworthiness.

Hyundai contends that the ODI Resume was simply a document prepared by private individuals and filed with a governmental agency. For this reason, Hyundai concludes that the ODI Resume was not an official document within the meaning of rule 803(8). *See Railroad Comm'n of Tex. v. Rio Grande Valley Gas Co.*, 683 S.W.2d 783, 788 (Tex.App.—Austin 1984, no writ).

A review of the ODI Resume reveals, however, that it was in fact prepared by the NHTSA, a branch of the federal government. The document was not simply prepared by individuals and filed with the government. The document is a report on the ODI's investigation into consumer complaints. The investigation had an assigned number, and the document upgraded a preliminary evaluation to an engineering analysis, with the assignment of a principal engineer. Unlike the federal cases cited by Hyundai, this report reflects the ODI's decision to upgrade its investigation based on its factual findings from its preliminary evaluation. Thus, it reflects the ODI's position regarding its continued investigation, not a preliminary position of an individual staff member or a draft position subject to later change. As a direct result of this document, the investigation was upgraded. As a report from a federal agency containing data compilations of consumer complaints and setting forth the agency's investigation activities and matters observed pursuant to its duty to investigate defects, the ODI Resume falls within rule 803(8)'s exception to the hearsay rule.

■ Even if we are wrong in our conclusion that the ODI Resume was properly admitted under rule 803(8), the trial court instructed the jury that the document was not to be considered as proof of a defect in the car, of negligence, or of gross negligence. The submitted instruction served to sufficiently limit the jury's consideration of the ODI Resume, thereby alleviating whatever prejudicial effect the admission of the report may have had on Hyundai. *See John Deere Co. v. May*, 773 S.W.2d 369, 375 (Tex.App.—Waco 1989, writ denied); *Air Shields, Inc. v. Spears*, 590 S.W.2d 574, 579 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). This is particularly true in light of the other testimony and studies that were admitted regarding Hyundai's notice of the defect. Therefore, assuming that the ODI Resume was erroneously admitted, we do not believe Hyundai has shown that such error was reasonably calculated to cause and probably did cause the rendition of an improper judgment in view of the limiting instruction and the other evidence presented. *See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d at 340.

Hyundai's fifth point of error is overruled.

### ALLOCATION OF PEREMPTORY STRIKES

Hyundai's sixth point of error complains that the trial court erred in failing to reallocate the peremptory strikes because the defendants were antagonistic to each other. Specifically, Hyundai claims that defendants Reyes and Padron should have been aligned with Mario and that the peremptory challenges should have been allocated in a different manner.

At the conclusion of the voir dire examination, but prior to the exercise of peremptory challenges, Hyundai filed a motion for proper alignment of parties and for equalization of peremptory challenges to jurors. Hyundai urged that Reyes and Padron should be aligned with Mario because there was no antagonism between them. Significantly, Hyundai failed to allege that there was antagonism between Hyundai and Reyes. The trial court denied the motion and allocated three strikes to Hyundai, three strikes to Reyes and Padron, and six strikes to Mario.

In determining whether the trial court erred, we consider the pleadings, information disclosed by pretrial discovery, information disclosed during the voir dire examination and other information brought to the attention of the trial court. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 5 (Tex.1986); *American Cyanamid v. Frankson*, 732 S.W.2d 648, 651 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). The existence of antagonism is a question of law. *Garcia v. Central Power & Light Co.*, 704 S.W.2d 734, 736 (Tex.1986); *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 919 (Tex.1979).

Mario's pleadings alleged various acts of negligence against both Reyes and Hyundai. The defendants filed cross-actions against each other. During discovery, Reyes entered into an agreement with Hyundai in which each side agreed to limit its discovery efforts. Reyes stipulated that he would not name any independent experts but would rely on Hyundai's experts. Mario refused Reyes's offer of his insurance policy limits prior to trial. During voir dire, Mario's attorney told the jury that "what this lawsuit boils down to is that we are trying to collect for these two young men in a legal debt that the driver and Hyundai, American Hyundai and Laredo Hyundai, that we say they owe." Reyes's counsel stated: "I suspect that Hyundai lawyers will get up here and say to you that this accident was all Vince's [Reyes's] fault." Counsel for Hyundai argued that Reyes's speeding caused the accident. Defendants are antagonistic with each other when each one is contending that the other person is solely responsible for plaintiff's injuries. *Patterson Dental Co.*, 592 S.W.2d at 918. Since there was antagonism, the trial court should have equalized, in some form, the peremptory strikes.

In order to obtain a reversal, Hyundai must show, based on the entire record, that the trial was materially unfair. *Garcia*, 704 S.W.2d at 737. In determining whether the trial court's decision in allocating peremptory strikes was so erroneous as to require reversal, this court must determine whether the trial was hotly contested and the evidence sharply conflicting. *Patterson Dental Co.*, 592 S.W.2d at 921. Hyundai

argues that since there was conflicting evidence at trial, it is entitled to a new trial. In general, however, all cases that are submitted to a jury involve conflicting evidence and contested issues. If there was no conflict, there would be no need for a trial. *See* Jack Ratliff, *Peremptory Challenges and Contested Trial: Some Like it Hot*, 30 S. TEX. L. REV. 311 (1989). We understand *Patterson Dental* to require that we look at factors such as the number of questions to the jury, whether the verdict was unanimous, and whether any motions for summary judgment or instructed verdict were made. 592 S.W.2d at 921. Here, although Hyundai moved for an instructed verdict, only eight questions were submitted to the jury, and the verdict was unanimous. The jury did not find gross negligence and failed to award punitive damages. Moreover, the jury did not award Fidel Alvarado any damages based on his bystander claim. Finally, the jury assessed twenty percent of the responsibility to Reyes. As a result of these factors, it has not been shown that this was a materially unfair trial.

Hyundai's sixth point of error is overruled.

### PREJUDGMENT INTEREST

In Hyundai's seventh complaint, Hyundai contends that the trial court erred in awarding prejudgment interest from the date the Webb County suit was filed. The instant suit against Hyundai was not filed in Duval County until February 7, 1991. Mario's proposed judgment included prejudgment interest from June 26, 1989, the date the Webb County suit was filed. Overruling Hyundai's objection that prejudgment interest should begin 180 days after June 26, 1989, the trial court rendered judgment that Mario recover prejudgment interest from June 26, 1989. This 180 day difference amounts to approximately $900,000 in prejudgment interest to which Hyundai claims Mario is not entitled. We agree with Hyundai.

An award of prejudgment interest is governed by Section 6(a) of article 5069–1.05 of the Texas Revised Civil Statutes, which provided, in pertinent part:

... Judgments in wrongful death, personal injury, and property damage cases must include prejudgment interest.... [P]rejudgment interest accrues on the amount of the judgment during the period beginning on the 180th day after the date the defendant receives written notice of a claim or on the day the suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered. TEX.REV.CIV. STAT. ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1998). The trial court construed "the suit" to include the prior action brought by Mario in Webb County. We construe the phrase "the suit" to mean the suit in which the judgment is rendered. "The suit" in this case means the suit in Duval County filed on February 8, 1991.

The Webb County suit is relevant to the prejudgment interest determination, however, insofar as service of the petition constituted receipt by Hyundai of "written notice of a claim." It is difficult to conceive of a more formal notice than a lawsuit. The question then is which came first: (1) the suit in Duval County [February 8, 1991]; or (2) 180 days after written notice [December 23, 1989]? Clearly, it is the latter. Under section 6(a) of article 5069–1.05, Mario is entitled to prejudgment interest beginning no earlier than December 23, 1989, 180 days after Hyundai received written notice of Mario's claim through service of process in the Webb County suit. Because the trial court calculated prejudgment interest from a date that was 180 days too early, the judgment against Hyundai Motor Company and Hyundai Motor America, Inc. is excessive by $887,671.23. The judgment against Port City Hyundai, Inc., which is based on the amount awarded against Hyundai Motor Company and Hyundai Motor America, Inc., is excessive by $44,385.56. Hyundai's seventh point of error is sustained, and we modify the trial court's judgment by ordering a deletion of the excessive prejudgment interest awards.

### FEDERAL PREEMPTION

Hyundai's eighth point of error urges that the trial court erred in permitting the jury to consider any claim based on the theory that the Excel should have had a lap belt because the state-law theory is preempted by the Supremacy Clause of the United States Constitution. This issue was resolved against Hyundai's position in *Hyundai Motor Co. v. Alvarado*, 974 S.W.2d 1 (Tex.1998). Hyundai's eighth point of error is overruled.

### SUFFICIENCY OF THE EVIDENCE

Hyundai's ninth point of error complains that the evidence was insufficient to support the jury's findings on proximate and producing cause. The crux of Hyundai's argument is that Hyundai conclusively established that Mario was not wearing his seat belt at the time of the accident; therefore, the evidence was insufficient to support the jury's finding that the passive restraint system in the Excel was a proximate or producing cause of Mario's injuries.

We briefly summarize the evidence on this point. Hyundai presented testimony from two experts who concluded that Mario was not wearing a seat belt based on their observations of the wreckage and review of the medical records. Hyundai also introduced the testimony of a witness who arrived at the scene shortly after the accident. However, Mario testified that he was wearing a seat belt, and his testimony was confirmed by Reyes and Fidel Alvarado, who were in the car with Mario. Two additional witnesses testified that they saw Mario with his seat belt on at the last rest-stop before the accident. The police report also recited that everyone in the car, including Mario, was wearing a seat belt at the time of the accident. One of Mario's experts also testified that Mario was wearing his seat belt.

█ This is simply a case of conflicting evidence. Where conflicting evidence is presented, we are not called upon to reweigh the evidence; the jury's verdict on such matters is considered to be conclusive. *Sanchez v. Guerrero*, 885 S.W.2d 487, 491 (Tex.App.—El Paso 1994, no writ); *USX Corp. v. Salinas*, 818 S.W.2d 473, 489 (Tex.App.—San Antonio 1991, writ denied). Hyundai's ninth point of error is overruled.

### CONCLUSION

The trial court's judgment is modified in the following respects: (1) the judgment

against Hyundai Motor Company and Hyundai Motor America, Inc. is modified by deleting $887,671.23 from the prejudgment interest award; and (2) the judgment against Port City Hyundai, Inc. is modified by deleting $44,383.56 from the prejudgment interest award. As modified, the trial court's judgment is affirmed.

BILL J. STEPHENS, Justice (Assigned), dissenting.

I respectfully disagree with my colleague's treatment of Point of Error Number One, and accordingly I dissent.

The majority opinion believes the real issue to be whether "tag-along" venue is a legitimate method of acquiring venue, citing from JUSTICE MICHOL O'CONNOR, ET AL., O'CONNOR'S TEXAS RULES: CIVIL TRIALS 95 (1997):

> This (the venue statute) permits a plaintiff to establish venue against a target defendant by first filing suit against a friendly defendant, who then will file a third party action against the target defendant.

and concluding that *Polaris Inv. Management Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex.1995) supported that premise. The Polaris case was an appeal from the denial of mandamus by the Court of Appeals to force the trial court to change its venue ruling. The Supreme Court granted the writ and held that mandamus would not lie to challenge a venue decision. I do not read into this opinion that "tag-along" venue was approved by the Supreme Court.

I would further support my position in the following dissent by reliance on *WTFO, Inc. v. Braithwaite,* 899 S.W.2d 709, 714 (Tex. App.—Dallas 1995, no writ) which held:

> When a motion to transfer venue is filed, the initial burden of proof that venue is maintainable in the county of suit is on the plaintiff. TEX.R. CIV. P. 87(2)(a). If the defendant specifically denies the venue facts, the plaintiff must support his pleadings by prima facie proof of the venue facts. TEX.R. CIV. P. 87(3)(a). . . . If the plaintiff fails in his burden, the defendant has the burden of showing that venue is maintainable in the county in which the transfer is sought under either a general,

permissive, or mandatory venue rule. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 15.001–.040 (Vernon 1986); TEX.R. CIV. P. 87(2)(a). If the defendant succeeds in that showing, the cause will be transferred to the appropriate county. TEX.R. CIV. P. 87(2)(a).

and *Pearson v. Jones Co., Ltd.,* 898 S.W.2d 329 (Tex.App.—Eastland 1994, no writ) for the proposition that a reviewing court must review the entire record and determine whether there is any probative evidence that venue was proper in the county of trial.

## POINT OF ERROR NUMBER ONE

*The trial court's judgment must be reversed, because venue was improper in Duval County.*

This case was first filed in Webb County, the county of the accident, and resulted in a final summary judgment in favor of Hyundai. That case was appealed to this court as Cause No. 04–91–00208–CV, styled *Mario Alvarado, et al. v. Hyundai Motor Co., et al.* On March 14, 1994, this court reversed and rendered the trial court's judgment.

After the summary judgment was granted in Webb County, this suit was filed in Duval County against Nueces County residents Vicente Reyes, for negligence, and Rita Padron, the owner of the car, for negligent entrustment. After Reyes and Padron answered without challenging venue, plaintiffs, on the same day, amended their pleadings to join the same Hyundai defendants named in the Webb County suit. The Hyundai defendants filed answers, subject however, to their motions to transfer venue to Webb County, Texas and to their pleas in abatement. Following a hearing on the motions to transfer venue to Webb County, the motions were denied. After denial of the motion to transfer venue, the Hyundai defendants filed cross-actions against Reyes and Padron.

## VENUE

The Hyundai defendants' motions to transfer venue, which were timely filed in March, 1991, were heard by the Duval County district judge on May 1, 1991. These motions were denied by order signed July 24, 1991.

Venue was proper in either Webb County, Texas, where the accident occurred, or in the county where the defendants resided. TEX. CIV. PRAC. & REM.CODE ANN. § 15.001 (Vernon 1986).

On March 4, 1991, the plaintiffs filed the following Requests for Admissions in the case in Duval County, addressed to Reyes and Padron and their attorney of record:

1. Admit or deny that Rita Padron is a resident of Duval County, Texas.
2. Admit or deny that Vicente Reyes is a member and resident of the household of Rita Padron.

The record shows that plaintiff's attorney certified that true and correct copies of the Requests for Admissions to Reyes and Padron were forwarded to all counsel of record on the 1st day of March, 1991. Neither Reyes nor Padron filed answers to the Requests for Admissions.

The record further reveals that a copy of the Request for Admissions were served upon the attorney for Reyes and Padron on March 1, 1991, but the post office "green card" showing that the attorney for Reyes and Padron received such copy was not filed in the court records until November 17, 1992, a date after the Hyundai defendants' motions to transfer venue to Webb County had been denied.

The plaintiffs allege in their original petition (as well as in their trial petition) that:

Defendants Vicente Reyes and Rita Padron are residents of Duval County, Texas and can be served with citation by serving them at their residence located at 106 E. King, San Diego, Texas.[1]

Reyes and Padron state, in their answer to plaintiffs' original petition, that:

the allegations contained in Plaintiffs' Original Petition are generally untrue and demands their legal prerogative of requiring Plaintiffs to prove each and every allegation if they can.

Hyundai included in their motions to transfer venue from Duval County to Webb County, a specific denial that Reyes and Padron were Duval County residents. Further, there were attached to the motions, "true and correct" copies of the deposition of Armando Fuentes, taken on July 24, 1990 in the Webb County suit, which stated that venue was proper in Webb County, where the accident occurred.

Hyundai contends that the venue facts alleged in Plaintiffs' petition could no longer be taken as true after Hyundai's allegations in their motions to transfer venue that venue in Duval County was improper. Their allegations were:

1) the defendants Reyes and Padron do not reside in Duval County; 2) the alleged cause of action did not occur in Duval County; 3) there are no mandatory or permissive exceptions that authorized the maintenance of the action in Duval County; 4) specifically, the Hyundai's (sic) defendants denied that the defendants Reyes and Padron are residents of Duval County or that they were residents of Duval County when this action was instituted; 5) they alleged that the plaintiff's cause of action, if any, is founded upon an accident which occurred in Webb County, Texas; and 6) that if plaintiffs have a cause of action, it accrued in Webb County.

Plaintiffs responded to Hyundai's motion to transfer venue, claiming that venue was proper in Duval County, pursuant to section 15.001 of the Texas Civil Practice and Remedies Code since the defendants Reyes and Padron filed a general denial and did not challenge venue. They also claimed that venue was proper in Duval County as to the Hyundai defendants as a result of the third party action filed by Reyes and Padron against the Hyundai defendants pursuant to section 15.062 of the Texas Civil Practice and Remedies Code.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.061 (Vernon 1986) provides:

When two or more parties are joined as defendants in the same action or two or more claims or causes of action are properly joined in one action and the court has venue of an action or claim against any one defendant, the court also has venue of all claims or action against all defendants un-

1. The record does not show that citation was ever issued or served on either Reyes or Padron.

less one or more of the claims or causes of action is governed by one of the provisions of Subchapter B requiring transfer of the claim or cause of action, on proper objection, to the mandatory county.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.062 (Vernon 1986) provides:

Venue of the main action shall establish venue of a counterclaim, cross claim, or third-party claim properly joined under the Texas Rules of Civil Procedure.

The Hyundai defendants argue that the failure of Reyes and Padron to file a motion to transfer venue merely waives the right to challenge venue and has no effect whatsoever on the rights of the Hyundai defendants to challenge venue of the action brought by the plaintiffs against them. With this argument, I agree.

Plaintiffs respond, claiming that venue in Duval County is proper because the Requests for Admissions sent to Reyes and Padron establish this fact. They further state that "because these requests were never answered, they were automatically deemed admitted." In their brief, they argue:

The evidence before the trial court at the time of its venue determination established without question that Reyes and Padron lived in Duval County, and therefore Duval County was a permissible choice for Alvarado pursuant to TEX. CIV. PRAC. & REM. CODE § 15.001 (Vernon 1986).

\* \* \* \* \* \* \* \*

Because the suit against Hyundai grew out of the same transaction as the suit against Reyes and Padron, and because the trial court had venue over the claims of Reyes and Padron, section 15.062 required that venue over the Hyundai claims be retained in Duval County.

Rules 86 and 87 of the Texas Rules of Civil Procedure govern motions to transfer venue. TEX.R. CIV. P. 86, 87. Rule 86 provides in relevant part that the motion to transfer venue shall state that the action should be transferred to another county of proper venue because "the county where the action is pending is not a proper county," and "the

motion shall state the legal and factual basis for the transfer of the action" and further, "shall request transfer of the action to a specific county of mandatory or proper venue." The Hyundai defendants' motions to transfer venue from Duval County to Webb County meet the requirements of Rule 86.

### Governing Law of Review

The standard of appellate review is governed by the following language of TEX. CIV. PRAC. & REM.CODE ANN. § 15.064 (Vernon 1986):

(b) On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error. In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits.

The plain language of § 15.064(b) requires the appellate court to conduct an independent review of the entire record to determine whether venue was or was not proper in the county of suit. In deciding a venue issue, the Court of Appeals will conduct an independent review of the entire record, including the trial on the merits. TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b) (Vernon 1986); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757–58 (Tex. 1993).

On appeal, the issue is not whether the trial court properly determined the venue issue, but whether the venue as determined by the trial court is, in fact, proper or improper. If venue is improper, it is presumed to be harmful error, and the case will be reversed.

The language of TEX.R. CIV. P. 87(3)(a) is particularly persuasive:

(a) Affidavit and Attachments. All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party. When a venue fact is specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact; provided, however, that no party shall ever be required for venue purposes to support by prima facie proof the existence of a cause of action or part thereof, and at the hearing the pleadings of the parties shall be taken as conclusive

on the issues of existence of a cause of action. Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading. Affidavits shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify.

No party is required to prove the elements of his cause of action for the purpose of establishing venue; however, when the defendant specifically denies the venue allegations of the plaintiff, the latter is required to present prima facie proof of the venue facts. TEX.R. CIV. P. 87(3)(a); *Conoco, Inc. v. Ruiz*, 818 S.W.2d 118, 126–7 (Tex.App.—San Antonio 1991), *aff'd*, 868 S.W.2d 752 (Tex.1993); *Kimmell v. Leoffler*, 791 S.W.2d 648, 653 (Tex.App.—San Antonio 1990, writ denied).

In the case at bar, the plaintiffs offered no evidence to establish that venue was proper in Duval County. Their response to the motions to transfer venue contained no affidavits or other proof of any kind; they simply argued that Reyes' and Padron's waiver of their right to contest venue "proved" venue facts against the Hyundai defendants, and that the "deemed admission" by Reyes and Padron proved venue as to them in Duval County. I disagree.

One party's waiver does not constitute "prima facie proof" against another party asserting venue rights under TEX.R. CIV. P. 87(3). If another party's waiver could substitute for proof of venue facts, the statutory goal of proper venue as set out in section 15.061 of the Texas Civil Practice and Remedies Code would be thwarted.

Admissions deemed admitted against one defendant cannot be used to establish residence for venue purposes as to another defendant in the same case when the other defendant challenges venue. *See USX Corp. v. Salinas*, 818 S.W.2d 473, 479 (Tex.App.—San Antonio 1991, writ denied). Furthermore, it is well settled that deemed admissions resulting from one defendant's failure to answer a request for admissions may not be imputed to another defendant in the same

case, nor are they binding on the latter. *Hardy v. DeLeon*, 5 Tex. 211, 243 (1849); *Texas Supply Center, Inc. v. Daon Corp.*, 641 S.W.2d 335, 338 (Tex.App.—Dallas 1982, writ ref'd n.r.e.); *Carbonit Houston, Inc. v. Exchange Bank*, 628 S.W.2d 826, 829 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Gonzales v. Blake*, 605 S.W.2d 634, 636 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *Grierson v. Sreenan*, 560 S.W.2d 423, 425 (Tex.Civ.App.—Beaumont 1977, no writ); *Bryant v. Kimmons*, 430 S.W.2d 73, 76 (Tex.Civ.App.—Austin 1968, no writ).

In the case at bar, the Hyundai defendants filed motions to transfer venue to Webb County in which they alleged that venue was improper in Duval County. Their motions were supported by allegations and proof by way of affidavits that the plaintiffs' cause of action accrued in Webb County.

When a venue fact is specifically denied by a defendant, as it was here, the plaintiff, the party pleading the venue fact, must make prima facie proof of it. "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavits, are filed fully and specifically setting forth the facts supporting such pleading." TEX.R. CIV. P. 87(3)(a).

As already noted, the plaintiffs offered no proof by affidavits, or otherwise, that the defendants Reyes and/or Padron were residents of Duval County when the suit was filed. Even though the Requests for Admissions were deemed admitted, that had no effect on the Hyundai defendant's motion to transfer venue. The Hyundai defendants sustained their burden to show that venue was proper in Webb County by filing affidavits and the duly attached excerpts from the Armando Fuentes' deposition which stated that the accident, made the basis of the suit, occurred in Webb County. The district court of Duval County, on the basis of the pleadings and affidavits before it, was required to transfer venue of the case to Webb County, where the action accrued. *See Cox Engineering, Inc. v. Funston Machine & Supply Co.*, 749 S.W.2d 508, 511–12 (Tex.App.—Fort Worth 1988, no writ). This, it did not do, but

determined that venue was proper in Duval County.

A review of the entire record, both the trial and appellate, show no evidence that plaintiffs resided in Duval County at the time suit was filed. To the contrary, in answer to interrogatories filed on October 21, 1991, both Reyes and Padron state that their place of residence was "10521 Hemlock, Corpus Christi, Texas." I would take judicial notice that Corpus Christi, Texas is in Nueces County, Texas. Also, the record reveals that the plaintiffs introduced into evidence the accident reports made by a Texas Highway Patrolman at the scene of the accident. This report states that Reyes' place of residence was "10521 Hemlock, Corpus Christi, Texas," and that the accident made the basis of the suits occurred in Webb County, Texas. There was no evidence contradicting the sworn testimony of Reyes and Padron that they resided in Corpus Christi, Nueces County, Texas.

The plaintiffs' argument that venue is "proper" in Duval County is based on the premises that: 1) an unrelated party can "waive" another litigant's right to complain about venue; and 2) the mere existence in the court file of requests for admission directed to another party which were not answered, provides "evidence" of venue facts to defeat a motion to transfer venue. Neither argument is valid.

Reyes' and Padron's lack of complaint about venue does not make venue "proper" in Duval County, as to the Hyundai defendants. Venue is "proper" only if the venue statutes place venue in the county of suit. The plaintiffs' position ignores the real issue; whether venue in Duval County comported with the statutory venue provisions.

The Hyundai defendants' venue proof establishes conclusively that the plaintiffs' cause of action accrued in Webb County. The Hyundai defendants timely denied plaintiffs' venue allegations and moved to transfer the case to Webb County, Texas. The plaintiffs failed to meet their burden of showing that venue was proper in Duval County, and the record before this court demonstrates that venue was not proper in Duval County, but was proper in Webb County.

I would sustain the Hyundai defendants' first point of error as to Appellants Hyundai Motor Company, Hyundai Motors America, Inc., and Port City Hyundai, Inc., and order the cause of action as to them remanded to the trial court with instruction to direct the district clerk of Duval County, Texas, to forthwith transfer this cause, as to them, to the district clerk of Webb County, Texas, for further proceedings. The defendant Vicente Reyes did not appeal, and the judgment as to him should be final.