NO. 12-02-00144-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


§
 APPEAL FROM THE 294TH



IN THE INTEREST OF D.D.M., §
 JUDICIAL DISTRICT COURT OF

A CHILD


§
 VAN ZANDT COUNTY, TEXAS






OPINION


 Steven Gunnels ("Gunnels") appeals the termination of his parental rights. In his sole issue,
Gunnels argues that the trial court erred in denying his motion to dismiss. We reverse and remand
in part and affirm in part.


Background

 On December 8, 2000, an infant, later identified as D.D.M., was found abandoned in a
vehicle parked outside a fast-food restaurant in Canton, Texas. On the same day, the Texas
Department of Protective and Regulatory Services (the "Department") was appointed temporary sole
managing conservator of D.D.M. Subsequently, the Department discovered that D.D.M.'s mother,
Misti Michelle Mayo, had been murdered the day before the child was abandoned. Further, Gunnels
was identified as D.D.M.'s alleged father and later located by the Department. On December 20,
2000, the Department filed an amended petition for protection of a child, conservatorship and
termination of Gunnels' parental rights in a suit affecting the parent-child relationship ("SAPCR").

 On November 29, 2001, a hearing was conducted. The Department requested an extension
of time beyond the one-year dismissal deadline (1) and, as grounds, acknowledged that the parties were
waiting for blood to be redrawn to determine if Gunnels was the father of D.D.M. The court stated, 
"We'll extend it for six months." Neither Gunnels nor D.D.M.'s attorney ad litem objected. The
court reset the case for December 18, 2001. Further, the court stated that, if paternity testing
determined that Gunnels was not the father of D.D.M., the case would be tried on December 18. 
However, the court declared that, if Gunnels was determined to be D.D.M.'s father, a pre-trial
hearing would be held on December 18. The judge's oral pronouncements were never formally
memorialized and filed with the court.

 On January 2, 2002, paternity testing determined that Gunnels was the father of D.D.M. 
Further, on March 18, 2002, Michael and Shannon Monk (the "Monks") filed a petition in
intervention for conservatorship of D.D.M. The Monks are D.D.M.'s foster parents. On April 17,
2002, the Monks amended their petition for intervention to include a request for termination of
Gunnels' parental rights.

 On April 29, 2002, a jury trial was held. Before trial, Gunnels filed a motion to dismiss
under section 263.401 of the Texas Family Code. (2) Gunnels declared that the dismissal date for this
case was Monday, December 10, 2001. As of the trial date, Gunnels contended, the court had not
rendered a final order according to section 263.401 nor an order granting a 180-day extension which
complied with section 263.401(b). (3) Therefore, Gunnels argued that the suit should be dismissed
without prejudice. The court denied Gunnels' motion to dismiss. However, before testimony in the
trial began, the court discussed Gunnels' motion to dismiss and acknowledged that his motion was
timely filed and, subsequently, denied. Nonetheless, the court admitted that the sufficiency of the
six-month extension granted at the hearing on November 29, 2001 might be in question. The judge
decided to review the record but determined that the trial should proceed. 

 The following day, April 30, 2002, the court again discussed the November 29 hearing. On
the record, the court took judicial notice of the proceedings and pronouncements reflected by the
reporter's notes on November 29, 2001. The court ordered the clerk to file the original statement
of facts from the November 29 proceedings. Further, the court noted that the record failed to
memorialize the November 29 hearing on the docket sheet or through a written order. The court
found that, although the proceedings of November 29 were not memorialized due to a stenographic
error, an extension of time was rendered on that date. The court reiterated that the extension was for
six months and that the trial was set for December 18, 2001. Further, the court noted Gunnels'
objection that the November 29 proceedings did not comply with the requirements for an extension
under section 263.401 and were not reduced to writing. 

 Consequently, on April 29, 2002, the court signed a Nunc Pro Tunc Order, which stated that
the November 29 order was rendered but not memorialized by the court because of a stenographic
error. Further, the order declared that the court had continuing jurisdiction of the suit, that it was in
the best interest of the child that the Department should remain temporary managing conservator,
that an extension of the dismissal date should be granted, and that temporary orders for the safety
and welfare of the child were necessary to avoid further delay in resolving the suit. Finally, the order
declared that the new dismissal date was June 10, 2002, and that the suit was set for trial on
December 18, 2001. 

 Subsequently, the trial on the merits concluded and, on April 30, 2002, the jury found that
the parent-child relationship between Gunnels and D.D.M. should be terminated. On May 1, 2002,
the court ordered that the parent-child relationship between Gunnels and D.D.M. be terminated. 
Moreover, the court appointed the Department as permanent managing conservator of D.D.M. after
finding the appointment was in the best interest of the child. This appeal followed.


Extension of Dismissal Date

 In his sole issue, Gunnels argues that the trial court's November 29 oral order does not meet
the requirements for an extension of the one-year dismissal date under section 263.401(b). Because
the order is defective, Gunnels asserts, the statute permits no action other than a dismissal of the case
after the one-year deadline. Thus, Gunnels contends that the trial court erred when it denied his
motion to dismiss. The Department argues that the oral order is valid although it was not reduced
to writing and may technically fail to comply with section 263.401(b). 

Applicable Law

 When construing a statute, an appellate court must begin with the plain language of the
enactment. In re Bishop, 8 S.W.3d 412, 418 (Tex. App.-Waco 1999, no pet.). A rule of statutory
construction is that every word of a statute must be presumed to have been used for a purpose. 
Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981). If the wording of a statute
is clear and unequivocal, then it is given a literal interpretation. Mathews Constr. Co. v. Jasper
Hous. Constr. Co., 528 S.W.2d 323, 326 (Tex. Civ. App.-Beaumont 1975, writ ref'd n.r.e.).

 Section 263.401 of the Texas Family Code requires that a court dismiss any SAPCR filed by
the Department requesting termination of parental rights on the first Monday after the first
anniversary of the date the court rendered a temporary order appointing the Department temporary
managing conservator. Tex. Fam. Code Ann. § 263.401(a). However, if the court finds that
continuing the Department's conservatorship is in the child's best interest, the court may grant an
extension and retain the suit on the court's docket for a period not exceeding 180 days after the one-year dismissal date. Tex. Fam. Code Ann. § 263.401(b). To be valid, an extension order must
schedule the new dismissal date not later than the 180th day after the one-year deadline, make
additional temporary orders for the safety and welfare of the child as necessary to avoid further delay
in resolving the suit, and set a final hearing on a date that allows the court to render a final order
before the required dismissal date. Tex. Fam. Code Ann. § 263.401(b). Moreover, if the court
grants an extension but does not render a final order or dismiss the suit on or before the extended
dismissal date, the court must dismiss the suit. Tex. Fam. Code Ann. § 263.401(c) (Vernon 2002). 
Finally, the court may only grant one extension. Tex. Fam. Code Ann. § 263.401(c). 

 Section 263.401(b) previously provided that an extension order extended the court's
jurisdiction of the suit. Tex. Fam. Code Ann. § 263.401(b) (Vernon Supp. 2000). Recent
amendments, enacted by the 77th Legislature, changed the introductory paragraph of subsection (b).
Tex. Fam. Code Ann. § 263.401 historical note (Vernon 2002) [Act of May 22, 2001, 77th Leg.,
R.S., ch. 1090, § 8, 2001 Tex. Gen. Laws 2396]. The legislature omitted the phrase "may extend the
court's jurisdiction of the suit" and substituted the phrase "may retain the suit on the court's docket
for a period not to exceed 180 days." Id.; In re J.B.W., 99 S.W.3d 218, 224 (Tex. App.-Fort Worth
2003, pet. filed). The new introductory paragraph caused the dismissal deadlines, once held to be
jurisdictional, to become procedural and waivable. In re J.B.W., 99 S.W.3d at 224 n.27. Thus, the
legislature removed previous limitations on the trial court's jurisdiction. Id. at 224. 

 Further, the Legislature amended section 263.402(b) and added a provision that requires a
party to make a timely motion to dismiss the suit or to make a motion requesting the court render a
final order before the dismissal deadline. Tex. Fam. Code Ann. § 263.402(b) (Vernon 2002); In
re J.B.W., 99 S.W.3d at 224. Otherwise, the party waives his right to complain that the trial court
failed to dismiss the suit. Tex. Fam. Code Ann. § 263.402(b); In re J.B.W., 99 S.W.3d at 224. A
motion to dismiss is timely if the motion is made before the Department has introduced all its
evidence, other than rebuttal evidence, at the trial on the merits. Tex. Fam. Code Ann. §
263.402(b). Moreover, these amendments applied to all SAPCRs pending on September 1, 2001.
Tex. Fam. Code Ann. § 263.401 historical note (Vernon 2002) [Act of May 22, 2001, 77th Leg.,
R.S., ch. 1090, § 10, 2001 Tex. Gen. Laws 2398]; Tex. Fam. Code Ann. § 263.402 historical note
(Vernon 2002) [Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 10, 2001 Tex. Gen. Laws 2398]. 
Because this suit was pending on the effective date, the new amendments are germane to our
examination of the court's oral extension of the dismissal date. 

 If the dismissal date in section 263.401(a) passes without rendition of a final order, the court
must dismiss the suit. In re Bishop, 8 S.W.3d at 419; see In re T.M., 33 S.W.3d 341, 346-47 (Tex.
App.-Amarillo 2000, no pet.). The term "shall dismiss" without reservation imposes an obligation
on the trial court to dismiss the suit. In re L.L., 65 S.W.3d 194, 196-97 (Tex. App.-Amarillo 2001,
no pet.); see In re T.M., 33 S.W.3d at 346. Therefore, the court has no discretion in the matter. 
In re Bishop, 8 S.W.3d at 419; In re L.L., 65 S.W.3d at 197.

 When a trial court officially announces its decision in open court or by written memorandum
filed with the clerk, judgment is rendered. S & A Rest. Corp. v. Leal, 892 S.W.2d 855, 857 (Tex.
1995); In re Ruiz, 16 S.W.3d 921, 923-24 (Tex. App.-Waco 2000, no pet.); Becker v. Becker, 997
S.W.2d 394, 395 (Tex. App.-Beaumont 1999, no pet.). "Rendition is distinguishable from the entry
of judgment which is a purely ministerial act by which judgment is made of record and preserved."
Becker, 997 S.W.2d at 395 (quoting Arriaga v. Cavazos, 880 S.W.2d 830, 833 (Tex. App.-San
Antonio 1994, no writ)). Oral rendition of a judgment is proper. S & A Rest. Corp., 892 S.W.2d
at 858 (quoting Reese v. Piperi, 534 S.W.2d 329, 330 (Tex. 1976)). However, orderly administration
necessitates that the rendition be in and by spoken words, not in mere cognition. Id. 

 In a nunc pro tunc order, a trial court has plenary power to correct a clerical error made in
entering a final judgment, but cannot correct a judicial error made in rendering a judgment. Escobar
v. Escobar, 711 S.W.2d 230, 231 (Tex. 1986); Gutierrez v. Gutierrez, 86 S.W.3d 721, 726 (Tex.
App.-El Paso 2002, no pet.). Whether an error in a judgment is judicial or clerical is a question of
law. Escobar, 711 S.W.2d at 232. To determine whether a correction is a judicial or clerical error,
an appellate court considers the judgment actually rendered, not the judgment that should or might
have been rendered. Escobar, 711 S.W.2d at 231; National Unity Ins. Co. v. Johnson, 926 S.W.2d
818, 820 (Tex. App.-San Antonio 1996, no writ). A clerical error does not result from judicial
reasoning or determination. Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); Gutierrez, 86
S.W.3d at 726. On the other hand, a judicial error occurs in rendering as opposed to entering a
judgment. Escobar, 711 S.W.2d at 231. Further, a nunc pro tunc order may not alter or modify the
terms of a judgment as rendered. Wood v. Griffin & Brand, 671 S.W.2d 125, 129 (Tex.
App.-Corpus Christi 1984, no writ).

Analysis

 First, Gunnels complains that the extension order of November 29, 2001 was never
memorialized and filed with the court. However, the statute simply requires a court to "render" an
order. Tex. Fam. Code Ann. § 263.401(b). It does not specify that the order be written. The
extension of time for the dismissal deadline was announced in open court and, therefore, properly
rendered according to the statute. See S & A Rest. Corp., 892 S.W.2d at 857.

 Gunnels next argues that the order failed to specify a date certain for dismissal as required
by section 263.401(b). Section 263.401(b) states that the order "shall" schedule a "new date." Tex.
Fam. Code Ann. § 263.401(b). Use of the term "shall" imposes a duty on the trial court to follow
the statute by designating a fixed date. Tex. Gov't Code Ann. § 311.016(2) (Vernon 1998); see
In re Bishop, 8 S.W.3d at 418-19. Further, we are required to afford meaning to every word in a
statute. In re L.L., 65 S.W.3d at 197. The Department insists that the order was proper even though
it did not technically adhere to the statute and cites In re Bishop, 8 S.W.3d 412 (Tex. App.-Waco
1999, no pet.) to support its contention.

 The extension order in Bishop stated that the "suit shall be dismissed on dates set by
amended scheduling order which date is not later than 180 days following the date this temporary
order is rendered." In re Bishop, 8 S.W.3d at 418. The court found that, although the order lacked
a date certain for dismissal, the extension order stipulated that the latest date the trial court could
have scheduled a dismissal was 180 days after rendition of the order. Id. at 418-19. Therefore, the
court found that the extension order was proper. Id. However, in this case, the extension order did
not include a precise dismissal date but, instead, declared that the suit was extended for "six
months." Unlike Bishop, the trial court did not specify when the six-months extension began-on
the date of the extension order or on the date of the original dismissal deadline. The ambiguity of
the extension order gives rise to two feasible dismissal deadlines, contrary to the plain language of
the statute. Because the trial court's extension order did not comply with the mandatory, plain
language of section 263.401(b), it was invalid. See In re C.V.G., 2002 WL 31429763 at *3 (Tex.
App.-Houston [1st Dist.] 2002, no pet.) (concluding that because the docket notation lacked a new
dismissal date the extension order was invalid).

 The nunc pro tunc order set a new dismissal date of June 10, 2002 and, thus, altered the trial
court's extension order. However, a nunc pro tunc order may only correct a clerical error, and may
not alter or modify the terms of the order. See Riner v. Briargrove Park Prop. Owners, 976 S.W.2d
680, 682-83 (Tex. App.-Houston [1st Dist.] 1997, no pet.) (finding the nunc pro tunc judgment
improper because the modifications were substantive and material, including reinstating a lien to pay
for attorney's fees); Wood, 671 S.W.2d at 131-32 (finding the nunc pro tunc judgment void because
alterations in the adjudicated portions of the trial court's judgment as rendered were material and
constituted correction of a judicial error). Because the order in the case at hand was entered to
correct a judicial error by adding a date certain for the dismissal deadline, the nunc pro tunc order
was improper.

 The Gunnels' motion to dismiss was timely because it was filed before the Department
introduced all its evidence. See Tex. Fam. Code Ann. § 263.402(b). Because the extension order
was invalid and the nunc pro tunc order was improper, Gunnels' motion to dismiss should have been
granted by the trial court. Therefore, we sustain Gunnels' sole issue.


Intervenors' Claim

 Gunnels contends that this case must be dismissed in its entirety because the November 29
order was invalid. Because they had standing to intervene, the Monks argue that they have rights
distinct and separate from those of the Department. Further, the Monks assert that they are entitled
to separate and independent relief for their cause of action. Moreover, the Monks contend that
section 263.401 applies only to the Department and any actions affecting the Department in the
underlying suit have no effect on their separate and independent claims. 

Applicable Law

 Any party may intervene in a suit by filing a pleading, subject to being stricken out by the
court for sufficient cause on a motion of any party. Tex. R. Civ. P. 60; Brook v. Brook, 865 S.W.2d
166, 172 (Tex. App.-Corpus Christi 1993), aff'd, 881 S.W.2d 297 (Tex. 1994). Upon filing of the
petition, an intervenor becomes a party to the suit for all purposes. Brook, 865 S.W.2d at 172. If
a party is nonsuited or dismissed, an opposing party's right to be heard on a pending claim for
affirmative relief may not be prejudiced. Pleasants v. Emmons, 871 S.W.2d 296, 298 (Tex.
App.-Eastland 1994, no writ). The trial court retains jurisdiction over a pending claim for
affirmative relief if the trial court initially had subject matter jurisdiction. Williams v. Nat'l
Mortgage Co., 903 S.W.2d 398, 403 (Tex. App.-Dallas 1995, writ denied).

 A claim for affirmative relief is a pleading that states facts showing a cause of action
independent of the plaintiff's claim. Baca v. Hoover, Bax & Shearer, 823 S.W.2d 734, 737 (Tex.
App.-Houston [14th Dist.] 1992, writ denied). This claim would allow the party to recover benefits,
compensation, or relief despite plaintiff's abandonment or failure to establish a claim. Id.;
Pleasants, 871 S.W.2d at 298. Whether a pleading is an affirmative claim for relief is determined
by the facts alleged. Baca, 823 S.W.2d at 737.

Analysis

 On April 17, 2002, the Monks filed an amended petition in intervention asking for
termination of Gunnels' parental rights and for appointment as joint managing conservators of
D.D.M. This constitutes a request for affirmative relief. See Pleasants, 871 S.W.2d at 298; Baca,
823 S.W.2d at 737. There was no motion to strike the intervention by any party. As intervenors, the
Monks were parties to the suit for all purposes. See Brook, 865 S.W.2d at 172. Further, the Monks
fully participated in the trial of this cause. Moreover, recent amendments to section 263.401(b)
removed limitations on the trial court's jurisdiction. In re J.B.W., 99 S.W.3d at 224. Thus, because
subject matter jurisdiction in the Department's suit was proper in the trial court, it retained
jurisdiction over the Monks' claims for affirmative relief. See Williams, 903 S.W.2d at 403. 
Because their claim for affirmative relief was pending at the time of trial, the Monks' claim will not
be prejudiced if the Department's suit is dismissed. See Pleasants, 871 S.W.2d at 298.


Order of Termination and

Appointment of Managing Conservator

 Even if the Department's suit is dismissed, the Monks' claim will survive because the Monks
request affirmative relief independent of the Department's cause of action. See Pleasants, 871
S.W.2d at 298. Therefore, the order of the termination is valid. However, if the Department's suit
is dismissed, there is a question of whether the appointment of the Department as D.D.M.'s
permanent managing conservator in the order of termination is also valid.

 Section 161.207 of the Texas Family Code states that, if a trial court terminates a parent-child
relationship, the trial court shall appoint a managing conservator of the child. Tex. Fam. Code Ann.
§ 161.207(a) (Vernon 2002). The managing conservator may be either a suitable, competent adult,
the Department, a licensed child-placing agency, or an authorized agency. Id. Further, a trial court
has the power on its own motion to award custody to any suitable person inclined to undertake this
responsibility. In re Ruiz, 16 S.W.3d at 925 (quoting Bough v. Bough, 263 S.W.2d 573, 574 (Tex.
Civ. App.-San Antonio 1953, no writ)). Therefore, a trial court can appoint any proper person or
agency to be a managing conservator, regardless of whether such person or agency filed pleadings
requesting appointment. Id.

 In this case, the judge appointed the Department as permanent managing conservator. Even
if the Department's suit is dismissed, the trial court has the authority to appoint any proper person
or agency as D.D.M.'s managing conservator, despite a lack of pleadings requesting appointment. 
See id. Therefore, the trial court's appointment of the Department as D.D.M.'s permanent managing
conservator is valid.


Conclusion

 Based upon our review of the record, we conclude that the trial court erred in denying
Gunnels' motion to dismiss because the court's oral order did not meet the statutory requirements
for an extension of the one-year dismissal deadline. Accordingly, the order of the trial court denying
Gunnels' motion to dismiss is reversed, and this cause is remanded with instructions to dismiss the
Department's cause of action without prejudice in accordance with section 263.401 of the Texas
Family Code. However, we also conclude that the Monks' petition for termination and
conservatorship survives the dismissal of the Department's cause of action and that the Department
can be appointed permanent managing conservator in the absence of pleadings requesting the
appointment. Therefore, the order of termination, including the appointment of the Department as
permanent managing conservator of D.D.M., is affirmed.

 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered May 30, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.

















(PUBLISH)





1. Unless a court renders a final order or grants an extension, on the first Monday after the first anniversary
of the date that the Department was appointed temporary managing conservator, a court must dismiss a SAPCR filed
by the Department requesting termination of the parent-child relationship. Tex. Fam. Code Ann. § 263.401(a)
(Vernon 2002). The one-year dismissal deadline in this suit was Monday, December 10, 2001.
2. All statutory references are to the Texas Family Code unless otherwise indicated.
3. A proper extension order must schedule the new date for dismissal of the suit not later than the 180th day
after the dismissal deadline, make further temporary orders for the safety and welfare of the child as necessary to
avoid further delay in resolving the suit, and set a final hearing on a date that allows the court to render a final order
before the new dismissal date of the suit. Tex. Fam. Code Ann. § 263.401(b) (Vernon 2002).