MEMORANDUM OPINION



No. 04-07-00427-CV



TOYO SEAT CO., Ltd.,


Appellant



v.



Alejandro GARCIA,


Appellee



From the 365th Judicial District Court, Zavala County, Texas


Trial Court No. 04-09-10971-ZCV-AJA 


Honorable Ron G. Carr, Judge Presiding


Opinion by: Phylis J. Speedlin, Justice


Sitting: Alma L. López, Chief Justice

 Karen Angelini, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: January 23, 2008


REVERSED AND RENDERED

 In this interlocutory appeal, Toyo Seat Co., Ltd. ("Toyo Japan"), a Japanese corporation,
appeals the trial court's order overruling and denying its special appearance. See Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2007). Toyo Japan complains the trial court erred
because its contacts with Texas are insufficient to subject it to the jurisdiction of the Texas courts. 
Because we hold that Toyo Japan has not purposefully established minimum contacts with Texas, 
we reverse the judgment of the trial court and dismiss the claims against Toyo Japan for lack of
personal jurisdiction. Background The underlying lawsuit arises out of a 2003 car accident involving a 1993 Ford Escort. 
Alejandro Garcia sustained severe permanent injuries when the passenger seat he was sitting in
collapsed on impact. Garcia initially sued Ford Motor Company and Mazda Motor Corporation,
later joining as defendants both Toyo Seat USA Corporation ("Toyo USA"), a Michigan corporation,
and Toyo Japan. Garcia claimed that Toyo USA and Toyo Japan were liable because they designed
and manufactured the seat in question. Toyo Japan timely filed a special appearance contesting
jurisdiction. All parties agree that Toyo Japan does not have offices, employees, bank accounts, or
property in Texas. Garcia, however, opposed the special appearance contending Texas could
properly assert jurisdiction over Toyo Japan because it knowingly did design work and supplied
component parts "for an automobile to be sold throughout the United States, including Texas" and
"because Toyo-Japan and Toyo USA are alter egos and form a functional whole" subjecting Toyo-Japan to jurisdiction in Texas. 

 Prior to a hearing on the special appearance, Garcia settled his lawsuit with Ford and Mazda. 
Upon learning of the settlement, Toyo Japan filed a cross-claim against Ford and Mazda. Ultimately,
the trial court denied Toyo Japan's special appearance in a written order dated June 15, 2007. This
interlocutory appeal followed. Discussion

 On appeal, Garcia maintains that the trial court correctly denied Toyo Japan's special
appearance for two reasons: (1) Toyo Japan waived its special appearance by filing a cross-claim
seeking affirmative relief before securing a ruling on the special appearance; and (2) the evidence
shows that Toyo Japan is subject to personal jurisdiction in Texas. We will examine each argument
in turn.

I. Waiver of Special Appearance

 A party enters a general appearance when it: (1) invokes the judgment of the court on any
question other than the court's jurisdiction; (2) recognizes by its acts that an action is properly
pending; or (3) seeks affirmative action from the court. Exito Elecs. Co., Ltd. v. Trejo, 142 S.W.3d
302, 304 (Tex. 2004) (per curiam); Dawson-Austin v. Austin, 968 S.W.2d 319, 322 (Tex. 1998)
(quoting Moore v. Elektro-Mobil Technik GmbH, 874 S.W.2d 324, 327 (Tex. App.--El Paso 1994,
writ denied)). Here, the relevant inquiry is whether Toyo Japan's cross-claim for indemnity
amounted to a claim for affirmative action. The Texas Supreme Court has instructed:

 To qualify as a claim for affirmative relief, a defensive pleading must allege that the
defendant has a cause of action, independent of the plaintiff's claim, on which he
could recover benefits, compensation or relief, even though the plaintiff may abandon
his cause of action or fail to establish it. 

 

BHP Petroleum Co., Inc. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990) (orig. proceeding) (quoting
General Land Office v. Oxy U.S.A., Inc., 789 S.W.2d 569, 570 (Tex. 1990)). Garcia argues that
Toyo Japan's cross-claim constitutes an affirmative claim for attorneys' fees and other costs thereby
waiving its special appearance. Garcia points to the following language: "Defendant Toyo SEAT
CO., LTD. files these cross-claims against FORD MOTOR COMPANY and MAZDA MOTOR
CORPORATION for indemnification for costs incurred in defending this suit and for any
liability or judgment Plaintiff may obtain against Defendant TOYO SEAT CO., LTD." (emphasis
added). We disagree that the cross-claim waives Toyo Japan's special appearance. 

 In determining whether a pleading is an affirmative claim for relief, we look to the substance
of the facts alleged in the motion rather than the name of the pleading or the prayer for relief. Quanto
Intern. Co. v. Lloyd, 897 S.W.2d 482, 487 (Tex. App.-Houston [1st Dist.] 1995, no writ). Here, the
cross-claim at issue consists of four sentences broadly claiming Toyo Japan is "entitled" to
indemnification and contribution from its co-defendants "pursuant to the Texas Civil Practice and
Remedies Code." The pleading, however, cites no specific provision of the Texas Civil Practice and
Remedies Code as a basis for recovery and contains no "averments of fact upon which affirmative
relief could be granted." BHP Petroleum, 800 S.W.2d at 841 (quoting Newman Oil Co. v. Alkek, 614
S.W.2d 653, 655 (Tex. App.--Corpus Christi 1981, writ ref'd n.r.e.)). Instead, the cross-claim resists
Garcia's right to recover from Toyo Japan. A claim that merely resists the plaintiff's right to recover
does not qualify as a claim for affirmative relief. General Land Office, 789 S.W.2d at 570; Le v.
Kilpatrick, 112 S.W.3d 631, 634 (Tex. App.--Tyler 2003, no pet.); Pleasants v. Emmons, 871
S.W.2d 296, 298 (Tex. App.--Eastland 1994, no writ) (claim for indemnity or contribution from third
party is not a claim for affirmative relief). Because Toyo Japan's cross-claim did not seek affirmative
relief, it did not constitute a waiver of Toyo Japan's special appearance.

II. Special Appearance

 Having decided that Toyo Japan did not waive its special appearance, we must now decide
whether Toyo Japan is subject to the jurisdiction of the Texas courts. 

A. Burden of Proof and Standard of Review

 The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident
defendant within the provisions of the long-arm statute. Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 807 (Tex. 2002). Upon filing a special appearance, the nonresident
defendant then assumes the burden to negate all the bases of personal jurisdiction alleged by the
plaintiff. Id. Whether a court has personal jurisdiction over a defendant is a question of law;
however, the trial court frequently must resolve questions of fact before deciding the jurisdictional
question. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). On appeal,
we review the findings of fact for legal and factual sufficiency. See id. "For legal sufficiency points,
if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails." 
Id. at 795. For factual sufficiency points, we examine all evidence in the record and reverse only
when the finding is so against the great weight and preponderance of the evidence as to be manifestly
wrong or unjust. Carone v. Retamco Operating, Inc., 138 S.W.3d 1, 7 (Tex. App.--San Antonio
2004, pet. denied); Shapolsky v. Brewton, 56 S.W.3d 120, 128 (Tex. App.--Houston [14th Dist.]
2001, pet. denied). We review the conclusions of law drawn from the findings of fact de novo. 
BMC Software Belgium, 83 S.W.3d at 794. We must determine whether the conclusions of law
drawn from the facts are correct. Zieben v. Platt, 786 S.W.2d 797, 802 (Tex. App.--Houston [14th
Dist.] 1990, no writ).

B. Personal Jurisdiction Requirements

 Texas courts may exercise "in personam jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent
with federal and state constitutional due-process guarantees." Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute enables Texas courts to exercise
jurisdiction over a nonresident defendant that "does business" in Texas. (1) Tex. Civ. Prac. & Rem.
Code Ann. § 17.043-.044 (Vernon 1997); BMC Software Belgium, 83 S.W.3d at 795. Similarly,
federal due process requirements are met when the nonresident defendant has established minimum
contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair
play and substantial justice. Moki Mac River Expeditions, 221 S.W.3d at 575. "Although not
determinative, foreseeability is an important consideration in deciding whether the nonresident
defendant has purposefully established 'minimum contacts' with the forum state." BMC Software
Belgium, 83 S.W.3d at 795. "However, a defendant should not be subject to a foreign court's
jurisdiction based upon 'random,' 'fortuitous,' or 'attenuated' contacts." Id. Purposeful availment
is the "touchstone of jurisdictional due process," and requires that "the defendant purposefully avails
itself of the privilege of conducting activities within the forum State, thus invoking the benefits and
protections of its laws." Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex.
2005). Ultimately, "the defendant's conduct and connection with the forum" are the most critical
jurisdictional considerations. Id. at 789.

 A defendant's contacts with a forum can give rise to either general or specific jurisdiction. 
BMC Software Belgium, 83 S.W.3d at 795-96. "Specific jurisdiction is established if the defendant's
alleged liability arises from or is related to an activity conducted within the forum." Id. at 796. For
example, specific jurisdiction is established if the defendant committed a tort in whole or in part in
Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (Vernon 1997). "In contrast, general
jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that
the forum may exercise personal jurisdiction over the defendant even if the cause of action did not
arise from or relate to activities conducted within the forum state." BMC Software Belgium, 83
S.W.3d at 796. In this case, Garcia concedes that Toyo Japan is not subject to general jurisdiction;
accordingly, we will focus our analysis on whether Texas may properly exercise specific jurisdiction
over Toyo Japan. 

C. Specific Jurisdiction

 Specific jurisdiction is established if the defendant's alleged liability arises out of or is related
to an activity conducted by the defendant within the forum state. Moki Mac River Expeditions, 221
S.W.3d at 576. In order to arise out of conduct in the forum, there must be a substantial connection
between the contacts or conduct and the operative facts of the litigation. Id. at 585. Therefore, for
the trial court to have had specific jurisdiction over Toyo Japan: 1) Toyo Japan must have
purposefully made minimum contacts with Texas; and 2) Garcia's causes of action must have arisen
from or be related to those contacts. Commonwealth Gen'l Corp. v. York, 177 S.W.3d 923, 925
(Tex. 2005). 

 1. Minimum Contacts

 Garcia first argues that the following factual allegations are sufficient to satisfy the minimum
contacts requirements and subject Toyo Japan to personal jurisdiction in Texas: 1) Toyo Japan
designed and manufactured the front seats used in the 1993 Ford Escort; 2) Toyo Japan introduced
the seat into the stream of commerce; 3) Toyo Japan manufactures seats and seat components for
vehicles it knows will be sold in the U.S. and Texas; and 4) Toyo Japan made a deliberate effort to
sell seats and seat components for the U.S. market, which includes Texas. In response, Toyo Japan
disputes many of the factual allegations but argues that even assuming the factual allegations are
true, they do not establish the requisite minimum contacts with Texas. We agree. 

 Garcia contends the Texas Supreme Court case of Keen v. Ashot Ashkelon, Ltd., 748 S.W.2d
91 (Tex. 1988), controls our disposition of the instant case. In Keen, the court stated, "[a]
defendant's delivering of its product into the stream of commerce with the expectation that the
product will enter the forum state will ordinarily satisfy the due process requirement of minimum
contacts so as to afford that state personal jurisdiction over the defendant." Keen, 748 S.W.2d at 93. 
 Based on Keen, Garcia argues Toyo Japan is amenable to personal jurisdiction in Texas because
there is evidence that Toyo Japan delivered its Escort seat into the stream of commerce with a
"reasonable expectation" that the product would enter Texas. Since Keen was decided, however, our
Texas Supreme Court has on at least two occasions revisited the "minimum contacts" question of
in personam jurisdiction. See Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777 (Tex.
2005); see also CMMC v. Salinas, 929 S.W.2d 435 (Tex. 1996). On both occasions, our Supreme
Court has made clear that it intends to follow the "additional conduct" standard originally set forth
by the United States Supreme Court in Asahi Metal Ind. Co., Ltd. v. Superior Court of California, 
Solano County, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality opinion). See Michiana, 168
S.W.3d at 786; CMMC, 929 S.W.2d at 437.

 Turning first to CMMC, the sole question before the court in that case was whether the
Fourteenth Amendment permitted a Texas court to exercise personal jurisdiction over a French
corporation simply because the manufacturer knew its product would be shipped to Texas. CMMC,
929 S.W.2d at 436. The court noted that the manufacturer's only contacts with Texas were isolated
sales it made of equipment to customers and knowledge that its winepress sold to a New York
corporation would be shipped to Texas. Id. at 437. The plaintiff argued that "CMMC's release of
its winepress into the stream of commerce with knowledge of the intended destination is sufficient
to subject it to personal jurisdiction," citing Keen, among other cases. Id. The Supreme Court
disagreed and specifically noted that its previous holding in Keen did not extend the reach of Texas
jurisdiction beyond that allowed by the United States Supreme Court. See id. at 439-40 ("If
anything, Keen suggests that we would follow Justice O'Connor's formulation of the stream-of-commerce rule in Texas."). The Court clarified:

 The "substantial connection" between the defendant and the forum State necessary
for a finding of minimum contacts must come about by an action of the defendant
purposefully directed toward the forum State. The placement of a product into the
stream of commerce, without more, is not an act of the defendant purposefully
directed toward the forum State.

 

Id. at 438 (citing Asahi, 480 U.S. at 110-112). "A manufacturer cannot be fairly expected to litigate
in every part of the world where its products may end up; its contacts with the forum must be more
purposeful . . . before it can be constitutionally subjected to personal jurisdiction." Id. The Court
reiterated that "[m]inimum contacts are particularly important when the defendant is from a different
country because of the unique and onerous burden placed on a party called upon to defend a suit in
a foreign legal system." Id. at 440 (quoting CSR Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996)
(original proceeding)). 

 In Michiana, the Texas Supreme Court again considered "whether a nonresident
'purposefully avails' itself of a forum when it benefits from a major market without doing any of the
marketing." See Michiana, 168 S.W.3d at 786. The Court ultimately held that a single product sale
arising out of a phone call initiated by the plaintiff from Texas to an Indiana business does not satisfy
minimum contacts because the non-resident defendant did not purposefully direct marketing efforts
in Texas to solicit sales. Id. at 785-86. 

 Garcia urges us to follow Keen and argues the evidence establishes Toyo Japan purposely
designed the Ford Escort seats to comply with U.S. federal safety regulations with the expectation
that the product would enter Texas, thereby purposely availing itself of the benefits of the Texas
market as a matter of law. We respectfully disagree. Since Keen, our Supreme Court has clearly
stated that in order to exercise personal jurisdiction over a foreign corporation, the trial court must
find "an action of the defendant purposefully directed toward the forum State." CMMC, 929 S.W.2d
at 438 (quoting Asahi, 480 U.S. at 110-112). The mere act of placing the product into the stream of
commerce with "awareness that the stream of commerce may or will sweep the product into the
forum State" is not sufficient to demonstrate that a foreign corporation purposefully availed itself
of the Texas market. Id.; see also Asahi, 480 U.S. at 110-112. Here, assuming without deciding that
all disputed facts are true, the record does not reveal the existence of conduct by Toyo Japan
purposefully directed to Texas. In fact, because Toyo Japan's contacts with Texas "are certainly no
more and arguably somewhat less" than those in CMMC and Michiana, "the result must be the
same[,]" meaning that the due process clause prohibits specific jurisdiction. Michiana, 168 S.W.3d
at 787. There is simply no evidence that Toyo Japan sought a benefit, profit, or advantage by
availing itself of the Texas market. See id. at 785.

2. Alter Ego Theory

 Garcia also argues that "Toyo Japan and Toyo-USA are alter egos and constitute a functional
whole. Therefore, Toyo-USA's jurisdictional contacts are attributable to Toyo-Japan." Assuming
without deciding that there is evidence to support the theory that the two corporations are alter egos,
we hold Toyo USA lacks contacts with Texas that can be attributed to Toyo Japan. Toyo USA is
a Michigan corporation and is a wholly owned subsidiary of Toyo Japan. It maintains offices in
Michigan, Tennessee, and Kentucky. It maintains no offices in Texas. "Personal jurisdiction may
exist over a nonresident defendant if the relationship between the foreign corporation and its parent
corporation that does business in Texas is one that would allow the court to impute the parent
corporation's 'doing business' to the subsidiary." BMC Software Belgium, 83 S.W.3d at 798
(emphasis added); see also PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 173 (Tex.
2007). Here there is no evidence in the record that Toyo USA had sufficient contacts with Texas.

Conclusion


 Because Toyo Japan lacks minimum contacts with Texas, we reverse the judgment of the
trial court and render judgment dismissing the claims against Toyo Japan for lack of jurisdiction. 


 Phylis J. Speedlin, Justice






1. Section 17.042 defines "doing business" as: (1) contracting by mail or otherwise with a Texas resident with
performance either in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; (3) recruiting Texas
residents, directly or through an intermediary located in Texas, for employment inside or outside Texas; and (4)
performing any other acts that may constitute doing business. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon
1997).